**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: February 6, 2024

S23Y0919, S24Y0084. IN THE MATTER OF TIMOTHY ORMAN McCALEP.

PER CURIAM.

These disciplinary matters are before the Court on a notice of discipline (S23Y0919) and the report and recommendation of Special Master Daniel S. Reinhardt pursuant to a formal complaint (S24Y0084). In both matters, the Bar seeks the disbarment of Timothy Orman McCalep (State Bar No. 481089), a member of the State Bar of Georgia since 2003, for his systemic abandonment of multiple clients, for which he is charged with violating Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15 (I) and (II), 1.16, 3.2, 3.5 (d), 5.3, 5.4, 5.5, 8.4 (a) (1) and (4), and 9.3 of the Georgia Rules of Professional Conduct ("GRPC"), found in Bar Rule 4-102 (d). The maximum penalty for a single violation of Rules 1.1, 1.2, 1.3, 1.15 (I) and (II), 5.3, 5.4, 5.5, or

8.4 (a) (4) is disbarment, while the maximum penalty for a single violation of Rules 1.4, 1.5, 1.16, 3.2, or 3.5 (d) is a public reprimand. The maximum penalty for a single violation of Rule 8.4 (a) (1) is the maximum penalty for the specific Rule violated; here, the maximum penalty is disbarment because McCalep was charged with assisting others to violate Rule 5.5. McCalep, who is currently under an interim suspension, see Case No. S23Y0152 (Sept. 16, 2022), failed to file an answer to the formal complaint or a notice of rejection to the notice of discipline, and he has not requested review of the Special Master's report and recommendation by the State Disciplinary Review Board or filed exceptions in this Court. Having reviewed the record in both disciplinary matters, we agree that McCalep's multiple rule violations and history of abandonment of clients warrant his disbarment.

*S23Y0919*

This notice of discipline is based on State Disciplinary Board Docket ("SDBD") No. 7712. McCalep acknowledged service on June

6, 2023.[1] He has not filed a notice of rejection and is, therefore, in default, has no right to an evidentiary hearing, and is subject to such discipline as may be determined by this Court. See Bar Rule 4-208.1 (b). Additionally, by virtue of his default, the facts alleged in the notice of discipline are deemed admitted. See, e.g., *In the Matter of Cleveland*, ___ Ga. ___, at ___ n.14 (___ SE2d ___) (2023 Ga. LEXIS 213) (2023 WL 6611027) (Case No. S23Y0918, decided Oct. 11, 2023); *In the Matter of Bonnell*, 316 Ga. 460, 460 (888 SE2d 523) (2023).

The admitted facts show that a client hired McCalep to represent her in a criminal matter and a contested divorce matter in January 2022. The client spoke to McCalep over the phone and scheduled an in-person meeting, but when she arrived at his office, she only met with his paralegal and paid her a $10,000 retainer. The client did not meet with McCalep that day, but she heard him speak

---

[1] In addition to McCalep's acknowledgement of service, the Bar attempted personal service in July 2023, and after that was unsuccessful but before McCalep acknowledged service, the Bar effected service by publication in August 2023.

to the paralegal over the telephone. On January 28, 2022, the client received a retainer agreement from McCalep stating that all fees were paid in full. The client never met McCalep in person. In March 2022, McCalep called the client and told her that he had "transferred" her case and retainer fee to another licensed Georgia attorney, who worked for "Georgia Law Firm" ("GLF"). However, when the client checked the GLF website, there was no information about the attorney, and although the website listed McCalep's office address as its physical location, the website did not identify any attorneys associated with GLF.[2]

From March to July 2022, the client repeatedly asked for updates on her divorce case, but she was only able to speak to the paralegal and another individual, both of whom she believed worked at GLF. The other individual represented himself as an attorney working on the client's case. However, that individual was not an

---

[2] The Bar references Rule 7.2 (c) (1), which requires that any advertisement for legal services in Georgia must include prominent disclosures, including, inter alia, the attorney's identity and physical location. McCalep is not charged with violating this Rule.

attorney, and actually was the paralegal's husband. McCalep later admitted to knowing that his paralegal often asked her husband to help her at work, but the record does not indicate whether McCalep knew that the individual held himself out as an attorney, nor does the record indicate whether McCalep ever formally hired his paralegal's husband.[3] Neither the paralegal nor her husband put the client in touch with McCalep, and McCalep did not return her calls. The client also emailed the attorney to whom McCalep had transferred her divorce matter, asking to speak with her, but that attorney ignored her requests. In June 2022, the client was finally able to contact the licensed attorney, who told her that McCalep had informed the licensed attorney that the divorce case was uncontested; that she was only "hired" for an uncontested divorce and was paid $2,000 from the retainer; and that she did not work for GLF but that McCalep occasionally referred clients to her. The licensed attorney also told the client that the non-attorney did not

---

[3] The record in this disciplinary matter does not reflect whether the Bar took any action in response to the suggestion that this individual may have engaged in conduct constituting the unauthorized practice of law.

work for her; that she did not know how to contact McCalep; and that she did not know where the rest of the retainer went. On June 27, 2022, the client called McCalep's office and was told that McCalep was out of the country, that a non-attorney was handling her case, and that he would close out the case based on her dissatisfaction but would not give her a refund.

The client filed a grievance on August 2, 2022. McCalep did not respond, so on September 15, 2022, the Bar filed a petition for interim suspension based on this case and several of the cases at issue in S24Y0084. This Court ordered McCalep's interim suspension on September 16. Subsequently, he failed to acknowledge service of the notice of investigation, but in an unsworn response, McCalep stated that he never represented the client; denied ever meeting or speaking to her or receiving her money; stated he had never heard of GLF; acknowledged that he hired the licensed attorney on multiple occasions to help with court appearances while he dealt with health issues; stated that he did not recall any conversations with that attorney about the client's

6

divorce case because he does not handle divorce matters; and denied "transferring" the client's case to her. McCalep stated that he fired the paralegal in 2021 while he was out of the office on sick leave. He stated that he knew his paralegal's husband helped her while she worked for McCalep, but he denied knowledge of any work those two individuals did on this particular client's case.

The State Disciplinary Board ("Board") found probable cause to believe that McCalep violated Rules 1.2, 1.3, 1.4, 1.5, 5.3, 5.4, 5.5, and 8.4 (a) (4). In determining the appropriate level of discipline, the Board appropriately considered the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"), including the existence of aggravating or mitigating factors. See *In the Matter of Morse*, 265 Ga. 353, 354 (456 SE2d 52) (1995), superseded by Rule on other grounds as stated in *In the Matter of Cook*, 311 Ga. 206, 214-215 (857 SE2d 212) (2021). The Board determined that McCalep knowingly and intentionally violated the GRPC and that the client in SDBD No. 7712, as well as the grievants in S24Y0084, were seriously harmed by McCalep's disregard and

7

abandonment of their matters, lack of communication, misrepresentation, and the loss of significant funds they paid for him to represent them. The Board found the following aggravating factors: McCalep had two serious prior disciplinary offenses[4] in the form of a three-year suspension for his violation of Rule 1.7 related to sexual misconduct with a 17-year-old client, see *In the Matter of McCalep*, 283 Ga. 586 (662 SE2d 120) (2008), and a confidential reprimand[5] in 2020 for violating Rules 1.2, 1.3, 1.4, and 3.2; acted with a dishonest and selfish motive; showed a pattern of misconduct; had been charged with multiple offenses; displayed bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency because he failed to timely respond to the notice of discipline; refused to acknowledge the wrongful nature of his conduct; had substantial

---

[4] The Board determined that the instant matter was McCalep's third disciplinary infraction, which is "discretionary grounds for suspension or disbarment." Bar Rule 4-103.

[5] Although the issuance of a confidential reprimand is a form of confidential discipline, see Bar Rule 4-102 (b) (5), in the event of a later disciplinary proceeding, the confidentiality of the imposition of the prior confidential discipline is waived. See Bar Rule 4-208.

8

experience in the practice of law; and showed indifference to making restitution. See ABA Standard 9.22 (a)-(e), (g), (i)-(j).[6]

The Board observed that McCalep had shown a marked unwillingness to participate in the disciplinary process and it appeared that he had abandoned the practice of law. The Board determined that the Court has typically disbarred lawyers in similar cases. See, e.g., *In the Matter of Noriega-Allen*, 308 Ga. 398 (841 SE2d 1) (2020) (disbarring lawyer on notice of discipline who abandoned client matter and moved to Maine without providing contact information); *In the Matter of Jennings*, 305 Ga. 133 (823 SE2d 811) (2019); *In the Matter of Barton*, 303 Ga. 818 (813 SE2d 590) (2018).

*S24Y0084*

---

[6] Although the Board considered in mitigation that McCalep "appears to be suffering from some undefined personal problems," there is no indication in the record about what led the Board to this supposition. While a lawyer's personal problems may be a factor in mitigation, see ABA Standard 9.32 (c), we decline to consider it as a mitigating factor in the absence of any evidence supporting such a claim.

The eight grievances[7] at issue were filed between 2021 and 2022. McCalep responded to the notices of investigation in documents entitled "Bar Grievance Response," which were all dated March 11, 2022, but which the Bar did not receive until October 2022. The Bar filed a formal complaint addressing SDBD Nos. 7635 through 7642. On February 10 and March 8, 2023, the Bar's staff investigator attempted to personally serve McCalep at his official address on file with the Membership Department, see Bar Rule 4-203.1 (b) (3) (i), but he was informed by McCalep's landlord that McCalep had been evicted and that he had not been in the office since 2020.[8] McCalep was served by publication on March 17 and 24, 2023. See Bar Rule 4-203.1 (b) (3) (ii). On March 20, 2023, another attorney emailed Bar counsel on McCalep's behalf, stating that he could acknowledge service. Bar counsel informed that attorney that McCalep was being served by publication and that an answer would

---

[7] The grievances only pertain to five separate underlying cases.

[8] We note that, pursuant to Rule 1-207, "all members of the State Bar of Georgia shall keep the membership department of the State Bar of Georgia informed of their current name, official address and telephone number."

10

be due by April 24, and sent the attorney the formal complaint and an acknowledgment of service. Neither the attorney nor McCalep ever acknowledged service or responded to the formal complaint. The Bar filed a motion for default, which the Special Master granted.

The formal complaint charged McCalep with violating Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.15 (I) and (II), 1.16, 3.2, 3.5 (d), 5.3, 5.5, 8.4 (a) (1) and (4), and 9.3. The Special Master observed that he had granted the Bar's motion for default; that neither party had requested a hearing as to aggravation and mitigation; and that he had directed the parties to submit proposed reports and recommendations pursuant to Bar Rule 4-214, but only the Bar had submitted any such filing. The Special Master found that McCalep had admitted, by virtue of his default, the following facts.

In SDBD Nos. 7635 and 7636, a mother hired McCalep in November 2020 to represent her son in a criminal matter, for which she agreed to pay $5,000. She paid a down payment of $500 and made regular monthly payments until she had paid the $5,000 in full. McCalep filed an entry of appearance in December 2020, but

11

failed to file discovery requests and never made any further contact with the son. He also did not respond to inquiries from the son's legal team in New York about a case pending against the son there, resulting in a bench warrant being issued against the son in New York. The clients asked for a refund, and McCalep responded that they needed to pay him more money because the district attorney had filed an indictment that included additional charges. The clients filed separate grievances in June 2021. In his response, McCalep admitted he represented the son, but stated that he had done everything the mother requested; he otherwise denied violating ethical rules. While McCalep admitted that the total charge for the case was $5,000, he contended that he was informed by the court that the son had serious pending and unindicted charges; he admitted that he did not explain to the clients that he would not be handling the case for $5,000 and that he did not ask them to sign a new contract for a different amount. McCalep further admitted that he did not want to continue the representation, so he stopped communicating with the clients and the New York legal team; he

continued accepting payments until he was paid in full; and he did not intend to provide the clients a refund. The Bar issued a notice of investigation on both grievances on February 24, 2022. In his "Bar Grievance Response," McCalep stated that due to severe health issues, he hired people to help him manage his office, but later learned that they were stealing from and mismanaging the office during the COVID-19 pandemic. McCalep stated that he fired those people, and he could not say what they had done to the clients, but he denied the mother and son's allegations and denied ever speaking to them. In the formal complaint, the Bar alleged that McCalep violated Rules 1.2 (a), 1.3, 1.4 (a) and (b), 1.5 (a) and (b), 1.16 (d), and 8.4 (a) (4).

In SDBD No. 7637, in March 2020, the client's family retained McCalep to represent the client in a murder case, but McCalep did not visit the client in jail; did not give the client information about his case; and failed to file any pre-trial motions or respond to the State's discovery. McCalep did not attend court dates for the client's bond hearing (which was denied), indictment, and the first plea and

13

arraignment hearing; instead, a person identified as a paralegal appeared. When McCalep informed the client and his family that he would not come see them until three days before the client's next court date, the family requested a refund so they could hire a new lawyer. McCalep failed to provide the refund and failed to formally withdraw from the case as required by Uniform Superior Court Rule ("USCR") 4.3 and GRPC Rule 1.16 (a). The client's family hired other attorneys in June 2021. The client filed a grievance, to which McCalep did not respond. In his "Bar Grievance Response" to the notice of investigation, McCalep denied meeting or speaking with the client, reiterated his problems with the personnel he hired to manage his law office, and stated as to the client's allegations of rudeness that "[w]hen I was healthy, I did my best to speak and see all my clients as much as possible if they were incarcerated. Her [sic] allegations are not me." The Bar alleged that McCalep violated Rules 1.1, 1.2 (a), 1.3, 1.4 (a) and (b), 1.5 (a), 1.16 (c) and (d), 3.2, and 8.4 (a) (4).

14

In SDBD No. 7638, the client hired McCalep to handle a personal injury matter for herself and her minor son. The client filed a grievance in September 2021, to which she attached a letter that she had sent to McCalep. The letter indicated that the client had fired McCalep; demanded that McCalep turn over the case files; requested that he provide a list of work he had performed, including the breakdown of financial activity; requested an accounting of any recovery and a disbursement of funds; and asked when she could pick up the records. The letter stated that the last communication the client had received from McCalep was an email asking her to sign for a settlement check, even though he had not contacted her to ensure that she wanted to settle the case; that when the client went to the office to sign the check, McCalep was not present and the client was told to sign, but she declined the settlement offer; that the client had spoken to McCalep's paralegal, who had not been helpful and had not sent over the files; and that the client had no further communication with McCalep. Moreover, the letter stated that although McCalep claimed he paid her medical bills, her doctors

15

informed her that they did not know she had an attorney. McCalep settled the case on behalf of the client and her son without permission; did not disburse any money to the client; and failed to pay the medical bills, provide an accounting, and refund the client's money. In his "Bar Grievance Response" to the notice of investigation, McCalep stated that he did not know what his office staff did on the client's case because he had no information about her, but it appeared that she had communicated with the paralegal, became upset, and tried to terminate the representation. He stated that he did not have the client's file and received no money from her. The Bar alleged that McCalep violated Rules 1.2 (a), 1.3, 1.4 (a) and (b), 1.5 (a), 1.15 (I) and (II), and 8.4 (a) (4).

In SDBD Nos. 7639 and 7640, the chief judge of a superior court notified the Bar that McCalep had requested that his client be produced from the Department of Corrections to enter a negotiated plea, but McCalep failed to appear for that hearing. The chief judge spoke to the client and determined that McCalep had not discussed the potential plea with him prior to scheduling the plea hearing.

16

When McCalep subsequently failed to appear for calendar call, the chief judge scheduled a contempt hearing, which McCalep also failed to attend. Before the contempt hearing, the chief judge learned that McCalep had filed a leave of absence but had failed to send it to the court or opposing counsel as required by USCR 16.1. The chief judge rescheduled the contempt hearing, but McCalep never contacted the court to attempt to resolve the matter. During the time McCalep represented the client, he never personally spoke to the client or visited him in jail; failed to provide the client or his family members with a copy of the attorney-client agreement or to explain the terms; and failed to file discovery motions, investigate the case, or give the client an opportunity to assist in his own defense. McCalep falsely told the chief judge that he had not been paid, but in fact, the client's family had paid in full. Emails between McCalep and the client's mother indicated that he was trying to use his non-appearance at court to force the mother to pay an additional $5,000 to "fund a trial," which was not permitted by the attorney-client agreement. In September 2021, the Board issued a grievance based on the chief

17

judge's report, and the client filed his own grievance in January 2022. McCalep did not respond to either grievance. In his "Bar Grievance Response" to the notice of investigation, McCalep denied the Board's allegations and noted that several attorneys entered an appearance for the client; that a leave of absence had been filed on his behalf due to sickness, but he was unsure whether the proper filing protocol was followed; and that he was not held in contempt of court. In response to the client's allegations, McCalep stated that he had personally appeared for the client on Zoom while he was sick, and he also hired two attorneys to help him with representing the client. McCalep asserted that the client had verbally received a global plea offer and told a family member that he thought the offer was good, but later told the chief judge that he had never received an offer. McCalep believed that the client used this as a tactic to delay his sentencing, but the chief judge thought the client might be telling the truth and admonished McCalep and his office. However, the client's recorded jail calls proved that the client was being dishonest about not receiving the plea offer. The Bar alleged that

McCalep violated Rules 1.1, 1.2 (a), 1.3, 1.4 (a) and (b), 1.5 (a) and (b), 1.16 (d), 3.2, 3.5 (d), and 8.4 (a) (4).[9]

In SDBD Nos. 7641 and 7642, a mother hired McCalep in November 2021 to represent her son in a criminal matter. By March 2022, the grievants had paid McCalep over $18,000, including $5,000 for a bond hearing. McCalep purported to waive the son's

_____

[9] Rule 1.1 requires lawyers to "provide competent representation to a client." Rule 1.2 (a) requires lawyers to "abide by a client's decisions concerning the scope and objectives of representation" and "consult with the client as to the means by which they are to be pursued." Rule 1.3 requires lawyers "to act with reasonable diligence and promptness in representing a client." Rule 1.4 (a) requires lawyers to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent" is required, among other things. Rule 1.4 (b) requires lawyers to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.5 (a) prohibits lawyers from "mak[ing] an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Rule 1.5 (b) requires lawyers to communicate "the basis or rate of the fee and expenses for which the client will be responsible," "preferably in writing, before or within a reasonable time after commencing the representation." Further, this Rule requires lawyers to communicate "[a]ny changes in the basis or rate of the fee or expenses." Rule 1.16 (d) requires lawyers to, "[u]pon termination of representation," "take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned." Rule 3.2 requires lawyers to "make reasonable efforts to expedite litigation consistent with the interests of the client." Rule 3.5 (d) prohibits lawyers from "engag[ing] in conduct intended to disrupt a tribunal." Finally, Rule 8.4 (a) (4) prohibits lawyers from "engag[ing] in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

19

bond hearing; failed to visit the son in jail; and refused to contact the son or to communicate with the mother. Thus, the grievants asked for a refund, which McCalep ignored. The mother and the son filed separate grievances in March and May 2022, but McCalep failed to respond. In his "Bar Grievance Response," McCalep stated that it appeared that the people he hired to manage his law office had been stealing from the grievants and noted that the documents reflecting their payments did not contain his telephone numbers or address; instead, they showed a Miami area code and his office was listed as being in McDonough, though he never had an office there. The Bar alleged that McCalep violated Rules 1.2 (a), 1.3, 1.4 (a) and (b), 1.5 (a) and (b), 1.16 (d), and 8.4 (a) (4).

Based on McCalep's statements about his office staff stealing from and mismanaging his law firm, the Bar alleged in the formal complaint that in all of the matters, McCalep violated Rules 5.3 (a) through (c) because he possessed managerial and direct supervisory authority at his firm but failed to make reasonable efforts to ensure that the conduct of his non-lawyer employees was compatible with

20

his professional obligations; and his non-lawyer employees engaged in conduct that would have been violations of the GRPC if committed by a lawyer, and he knew of or ratified the conduct and failed to take reasonable remedial action after learning of it. The Bar also alleged that McCalep violated Rule 5.5 (a) because he provided an opportunity for his employees to hold themselves out falsely as people authorized to practice law in Georgia. Moreover, the Bar alleged that McCalep violated Rule 8.4 (a) (1) by allowing his non-lawyer employees to engage in conduct that violated the GRPC, including Rule 5.5 (a) and the other Rules as charged. The Bar further alleged that McCalep's conduct during the disciplinary proceedings violated Rule 9.3 because he failed to adequately respond to the notices of investigation.

Turning to the ABA Standards, the Special Master analyzed (1) the duties violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. As to duties violated, the Special Master found that ABA Standard 4.11 (disbarment

21

appropriate when lawyer knowingly converts client property and causes injury) applied to McCalep's violations of Rules 1.15 (I) and (II). ABA Standard 4.41 (disbarment appropriate when lawyer abandons the practice, knowingly fails to perform services for client, or engages in a pattern of neglect with respect to client matters and causes injury) applied to his violations of Rules 1.2 (a), 1.3, and 1.4. ABA Standard 4.51 (disbarment appropriate when lawyer's course of conduct demonstrates that he does not understand the most fundamental legal doctrines or procedures and causes injury) applied to McCalep's violations of Rule 1.1. ABA Standard 4.61 (disbarment appropriate when lawyer knowingly deceives client with intent to benefit lawyer or another and causes injury) applied to his violations of Rules 1.5 and 8.4 (a) (4). ABA Standard 5.11 (disbarment appropriate when lawyer engages in serious criminal conduct which involves dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on lawyer's fitness to practice law) applied to his violations of Rule 8.4 (a) (4). ABA Standard 6.2 (disbarment appropriate when lawyer knowingly

22

violates court order or rule with intent to obtain benefit for himself or another) applied to his violations of Rule 3.2, and ABA Standard 6.3 (disbarment appropriate when lawyer causes significant or potentially significant interference with the outcome of the legal proceeding and causes injury) applied to his violation of Rule 3.5 (d). Finally, ABA Standard 7.0 (disbarment appropriate when lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with intent to obtain benefit for lawyer or another and causes injury) applied to his violations of Rules 1.5, 1.16, 5.3, 5.5, 8.4 (a) (1), and 9.3.

The Special Master found that McCalep had violated the GRPC knowingly and intentionally, and that his misconduct caused serious injury to the grievants due to the loss of funds they paid for services he did not provide, and the loss of their opportunities to hire competent and diligent lawyers to pursue their claims and defend their rights. McCalep's misconduct also injured the legal profession. The Special Master found that the presumptive penalty was disbarment. The Special Master found the following aggravating

factors: prior disciplinary history, in that McCalep received a three-year suspension for violating Rule 1.7, see *McCalep*, 283 Ga. at 586; dishonest or selfish motive; pattern of misconduct; and multiple offenses. See ABA Standard 9.22 (a) – (d). Moreover, the Special Master found that McCalep refused to acknowledge the wrongful nature of his conduct; his incarcerated clients were vulnerable victims; he had substantial experience in the practice of law; and he was indifferent to making restitution.[10] See ABA Standard 9.22 (g) – (j). The Special Master found no applicable mitigating factors.

The Special Master summarized that McCalep's misconduct involved keeping fees for work he did not appear to have any intention of completing, or otherwise abandoning his office to be mismanaged by his non-lawyer staff, which seriously injured the

---

[10] The Special Master also found that McCalep's failure to respond to the notices of investigation was a factor in aggravation. See ABA Standard 9.22 (e) (identifying as a factor in aggravation "bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency"). However, McCalep was charged with violating Rule 9.3 for failing to respond to the notices of investigation, and we decline to rely on specific conduct in aggravation of discipline when that same conduct is also charged as a violation of the GRPC. See, e.g., *In the Matter of Eddings*, 314 Ga. 409, 418 n.3 (877 SE2d 248) (2022).

clients, and McCalep failed to respond to the disciplinary proceedings. Thus, the Special Master concluded that McCalep should be disbarred. See *In the Matter of Farmer*, 307 Ga. 307 (835 SE2d 629) (2019).

*Conclusion*

Having reviewed the records in both cases, we conclude that disbarment is the appropriate sanction for McCalep's severe misconduct in these matters and is consistent with the sanction imposed in similar cases.[11] See *Cleveland*, ___ Ga. at ___ (disbarring attorney who abandoned clients in civil and criminal matters and was found in default on notice of discipline); *In the Matter of Proctor*, 313 Ga. 637 (872 SE2d 691) (2022); *In the Matter of Powell*, 310 Ga. 859 (854 SE2d 731) (2021). Accordingly, it is hereby ordered that the name of Timothy Orman McCalep be removed from the rolls of

---

[11] We note that the questions of whether the Bar has proven violations of Rules 5.5 and 8.4 (a) (1) seem uncertain and we do not base our action here upon a violation of those Rules. Resolution of those questions is obviated by the strong evidence of severe violations of other Rules warranting disbarment.

persons authorized to practice law in the State of Georgia. McCalep is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*