NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: November 4, 2025

S25Y1459.  IN THE MATTER OF DESTIN MICHELLE GILLUM.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Christopher Samuel Brasher, who recommends that Destin Michelle Gillum (State Bar No. 683373) be disbarred for her conduct in connection with six client matters. Gillum is currently administratively suspended for failure to pay her license fees and for failure to respond to a notice of investigation in a different disciplinary matter. See *In the Matter of Gillum*, S26Y0171 (Sept. 10, 2025). The Special Master concluded that, based on Gillum's admissions by virtue of her default, Gillum, who has been a member of the State Bar since 2020, violated Rules 1.2(a), 1.3, 1.4(a), 1.5(a), 1.16(d), 3.2, 8.4(a)(4), and 9.3 of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule

4-102(d) and recommended that Gillum be disbarred. The maximum sanction for a violation of Rules 1.2(a), 1.3, and 8.4(a)(4) is disbarment. The maximum sanction for a violation of Rules 1.4(a), 1.5(a), 1.16(d), 3.2, and 9.3 is a public reprimand. Neither party has filed exceptions in this Court and this matter is now ripe for the Court's consideration. Having reviewed the record, we agree with the Special Master that disbarment is the appropriate sanction.

The record before us shows that on January 13, 2025, the State Bar filed a Formal Complaint against Gillum in State Disciplinary Board Docket ("SDBD") Nos. 7973, 7974, 7975, 7976, 7977, and 7978, charging her with violations of Rules 1.2(a),[1] 1.3,[2] 1.4(a),[3]

---

[1] Rule 1.2(a) provides, in pertinent part, that "a lawyer shall abide by a client's decisions concerning the scope and objectives of representation and … shall consult with the client as to the means by which they are to be pursued."

[2] Rule 1.3 provides, in pertinent part, that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] Rule 1.4(a) provides, in pertinent part, that a lawyer shall "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(n), is required;" "reasonably consult with the client about the means by which the client's objectives are to be accomplished;" "keep the client reasonably informed about the status of the matter;" and "promptly comply with reasonable requests for information."

1.5(a),[4] 1.16(d),[5] 3.2,[6] 8.4(a)(4),[7] and 9.3.[8] After the State Bar's initial attempts to personally serve Gillum could not be perfected, it served her by publication pursuant to Bar Rule 4-203.1(b)(3)(ii). Gillum failed to answer the Formal Complaint, and the State Bar filed a Motion for Default, which the Special Master granted. See Bar Rule 4-212(a). Gillum failed to file anything in response to the Motion for Default. The Special Master then submitted his report and recommendation.

The facts, as deemed admitted by Gillum's default, show that in SDBD No. 7973, the client paid Gillum $3,100 to represent him

---

[4] Rule 1.5(a) provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses," followed by a list of factors to be considered in determining reasonableness.

[5] Rule 1.16(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

[6] Rule 3.2 provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

[7] Rule 8.4(a)(4) provides that it shall be a violation of the GRPC for a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

[8] Rule 9.3 provides that "[d]uring the investigation of a matter pursuant to these Rules, the lawyer complained against shall respond to disciplinary authorities in accordance with State Bar Rules."

in a matter regarding a petition to modify a parenting plan. Gillum failed to file any pleadings, failed to communicate with the client—other than to ask him to remove a negative review he posted about her online—refused to return the client's money and blocked the client on her phone. Subsequently, the client filed a grievance against Gillum with the State Bar. Gillum never responded to the grievance. The client suffered actual injury in the form of his lost payment to Gillum, as well as anxiety and uncertainty about his case, based on Gillum having done nothing in his case.

In SDBD No. 7974, the client hired Gillum to represent him in a divorce case involving a minor child, paying her a flat fee of $9,000. Gillum failed to respond to the client's requests for information and updates regarding the case. Gillum then filed the petition for divorce more than a month after she had promised to do so and advised the client that the trial court had rejected her initial filing. Gillum failed to respond to discovery demands, did not attempt to collect the requested information, and failed to notify the client about the demands until after they were overdue. Once notified, the client

4

promptly provided the information. However, Gillum did not serve the responses on opposing counsel, who then filed a motion to compel. After learning that the court had set a hearing date regarding the motion to compel, the client contacted Gillum, who advised that he did not need to appear for the hearing. Gillum later emailed the client and falsely stated that she had filed the discovery responses. Gillum then failed to appear for the hearing and did not notify the court of a conflict.

As a result, the court ordered the client to provide complete responses to opposing counsel and to pay $1,770 for legal fees. Opposing counsel sent Gillum a letter outlining deficiencies in the prior responses to discovery, but Gillum failed to contact the client for the missing items for more than 20 days. When the client brought the items to Gillum's office, she refused to see him. Gillum's paralegal provided the client with a notice of a hearing which the trial court had sent to Gillum weeks prior. The client requested his file from Gillum, but Gillum did not respond to this request, nor did she provide the discovery documents to opposing counsel. Opposing

counsel then filed a motion to hold the client in contempt of court. The client requested that Gillum provide him with his file and any unearned fee, but Gillum failed to do either. Gillum ceased communications with the client. Subsequently, the client filed a grievance against Gillum with the State Bar, to which Gillum never responded.

In SDBD No. 7975, the client hired Gillum to represent her in a divorce case involving a minor child, initially paying Gillum $2,500. The client advised Gillum that she wanted to file promptly as she wanted to be listed as the plaintiff. Gillum failed to do so, and in the meantime opposing counsel filed a divorce petition. Gillum assured the client that she would file her divorce petition as planned. However, the client's spouse emailed her and told her that Gillum had failed to respond to his attorney's numerous attempts to contact her. Based on her belief that Gillum would be able to help her negotiate a resolution to her case, the client paid Gillum an additional $2,400. However, repeated emails to Gillum resulted only in responses that Gillum was moving offices and that she would not

be responding to attempts to contact her. Gillum's phone number was also disconnected. After Gillum failed to respond to the client's requests for a copy of her file and a refund, the client filed a grievance. Gillum responded to the grievance, alleging that she had moved offices, that she had attempted to contact opposing counsel, and that she would not provide invoices regarding her work because she only worked on a "flat fee" basis. The client rebutted this response with emails indicating that Gillum's response contained inaccurate and incomplete information.

In SDBD No. 7976, the client paid Gillum $3,000 to represent him in a matter regarding a petition for legitimation, child support, and a parenting plan. After rescheduling the hearing, Gillum arrived late, did not appear to have any familiarity with the case, did not bring any of the documentation which the client had provided to her, and had not spoken with any potential witnesses. The court made its ruling and directed Gillum to draft a proposed order granting relief. Although the client told Gillum that he wished to review the proposed order prior to its submission, she failed to

respond to the client's repeated attempts to contact her for an update. After learning that Gillum had moved offices and changed her phone number, the client continued to attempt to contact Gillum. He eventually received a message that Gillum had "limited availability due to [her] trial schedule" and that emails to her would be returned in the order in which they were received. However, Gillum failed to respond to the client's emails and the client's last email to Gillum came back as undeliverable. The client filed a grievance to which Gillum did not respond.

In SDBD No. 7977, the client hired Gillum to represent her in her divorce. Although Gillum filed the petition, she failed to take any further action in the case and failed to respond to the client's numerous attempts to contact her. After learning that Gillum had moved offices and changed her phone number, the client filed a grievance to which Gillum did not respond.

In SDBD No. 7978, the client agreed to pay Gillum a total of $4,900 to represent him in his ongoing divorce case, paying $2,500 up front with the remainder to be paid in installments. He was at

risk of being held in contempt of court and needed Gillum to review and approve a qualified domestic relations order ("QDRO") drafted by opposing counsel. Although the client informed Gillum that the QDRO had an incorrect amount on it and she advised him that she would correct the error, Gillum submitted the order without making this correction, and the court signed and issued it. After the client questioned Gillum about this error, Gillum advised the client that she would have it corrected. However, Gillum then ceased communicating with the client without having made the correction. The client filed a grievance to which Gillum did not respond.

Based on this conduct, the Special Master concluded that Gillum violated Rule 1.2(a) by failing to abide by each client's decisions concerning the scope and objectives of representation. The Special Master also concluded that Gillum violated Rule 1.2(a) in SDBD Nos. 7973, 7975, and 7977 by failing to pursue, prepare, and present a claim on behalf of her clients as agreed; in SDBD No. 7974 by failing to pursue, prepare, and present the divorce on behalf of her client as agreed; in SDBD No. 7976 by failing to draft and

9

present the final order for her client as agreed; in SDBD No. 7978 by failing to prepare and present the QDRO on behalf of her client as agreed; and in all six matters by failing to communicate with her clients as required by the rule under the circumstances described above.

The Special Master determined that Gillum violated Rule 1.3 by, without just cause, willfully disregarding and abandoning the clients' matters to their detriment. The Special Master concluded that Gillum violated Rule 1.4(a)(1) by not promptly informing her clients of her intention to disregard and abandon their matters, which was a decision or circumstance that required the clients' informed consent under the circumstances. The Special Master concluded that Gillum violated Rule 1.4(a)(2) by failing to reasonably consult with her clients about the means by which the clients' objectives were to be accomplished. The Special Master determined that Gillum violated Rule 1.4(a)(3) by failing to keep her clients reasonably informed about the status of their matters. The Special Master concluded that Gillum violated Rule 1.4(a)(4) by

failing to promptly comply with her clients' reasonable requests for information.

The Special Master determined that Gillum violated Rule 1.5(a) because her collection and retention of her entire fee under the circumstances described above amounted to charging and collecting an unreasonable fee. The Special Master concluded that Gillum violated Rule 1.16(d) in SDBD No. 7974 by failing to return unearned fees after abandoning representation of the client and by failing to return the client's file upon his request. The Special Master concluded that Gillum violated Rule 3.2 in each of the six matters because she failed to make reasonable efforts on behalf of her clients to expedite litigation consistent with their interests.

The Special Master determined that Gillum knowingly violated Rule 8.4(a)(4) in SDBD No. 7974 because her statements to the client regarding the status of her discovery responses to opposing counsel were dishonest, deceitful, and misleading. The Special Master concluded that Gillum violated Rule 9.3 by failing to respond to any of the notices of investigation.

11

In determining the appropriate level of discipline, the Special Master considered the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"). *In the Matter of Morse*, 266 Ga. 652 (1996). See also ABA Standard 3.0 (when imposing a sanction, a court should consider the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors). In addressing the duties violated, the Special Master determined that Gillum violated her duty of diligence, her duty to abide by her clients' decisions concerning the scope and objectives of representation, her duty to keep her clients informed about their cases, her duty to expedite her clients' cases consistent with their best interests, her duty to not collect unreasonable fees, her duty to return client property, and her duty to cooperate and communicate truthfully and completely with the State Bar.

In addressing Gillum's mental state, the Special Master determined that Gillum's conduct was knowing as she disregarded and abandoned all six matters, and, in SDBD No. 7974, was

dishonest and deceitful to protect herself. In addressing injury, the Special Master suggested that Gillum's misconduct caused serious injury to her clients, noting that she charged unreasonable fees and abandoned them in the midst of their proceedings. Thus, the Special Master concluded that disbarment was the presumptive discipline for Gillum's violations.

The Special Master further determined that, in aggravation, Gillum demonstrated a pattern of misconduct by committing multiple offenses by violating multiple parts of eight separate Rules over six separate client matters, committing bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with the rules or orders of the disciplinary agency, refusing to acknowledge the wrongful nature of her conduct, and showing an indifference to making restitution. See ABA Standards 9.22(c), (d), (e), (g), and (j). In mitigation, the Special Master determined that the only applicable factors were the absence of a prior disciplinary record and Gillum's inexperience in the practice of law. See ABA Standards 9.31 and 9.32(a) and (f). The Special Master noted that

these mitigating factors were substantially outweighed by the aggravating factors.

The Special Master then concluded that based on the Rules violated, Gillum should be disbarred, noting that such a sanction is consistent with prior cases in which an attorney violated similar Rule provisions. See *In the Matter of Greene*, 320 Ga. 527, 532 (2024) (disbarring defaulting attorney for violations of Rules 1.2(a), 1.3, 1.4(a)(3) and (4), 1.5(a), 1.16(d), and 3.2); *In the Matter of Cleveland*, 317 Ga. 515, 516-17 (2023) (disbarring defaulting attorney who abandoned multiple clients, thereby violating Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.16(a) and (c), 3.2, and 8.4(a)(4)); *In the Matter of McCalep*, 318 Ga. 260, 269 (2024) (disbarring lawyer who abandoned multiple clients thereby violating various Rules, including 1.1, 1.2, 1.3, 1.4, 1.5, and 3.2); *In the Matter of Briley-Holmes*, 304 Ga. 199, 209 (2018) (disbarring lawyer who abandoned multiple clients over a period of several years).

Having carefully reviewed the record, we agree that disbarment is the appropriate sanction under these circumstances.

14

If Gillum ever seeks readmission, restitution must be made and proof of that restitution must be offered to the Court. See *In the Matter of Herbert*, 319 Ga. 881, 884 (2024) (disbarring attorney and imposing the mandatory requirement that he "pay restitution to the grievants in the amounts of their losses as set out in the Notices of Discipline" should he seek reinstatement). As noted by the Special Master, disbarment is consistent with prior cases in which an attorney admitted, by virtue of default, to violating similar provisions of the GRPC and failed to participate in the disciplinary process. Accordingly, it is hereby ordered that the name of Destin Michelle Gillum be removed from the rolls of persons authorized to practice law in the State of Georgia. Gillum is reminded of her duties pursuant to Bar Rule 4-219(b).

*Disbarred. All the Justices concur.*