**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 4, 2024

S24Y1018, S24Y1019. IN THE MATTER OF NEVADA MICHAEL TUGGLE

PER CURIAM.

These disciplinary matters are before the Court on the consolidated report and recommendation of the State Disciplinary Review Board, recommending that the Court adopt the recommendation of Special Master Kevin B. Hicks that Nevada Michael Tuggle (State Bar No. 301224), a member of the State Bar of Georgia since 2011, be disbarred for his violations of Rules 1.1, 1.3, 1.4, 1.16 (d), and 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("Rules"), found in Bar Rule 4-102 (d), in State Disciplinary Board Docket ("SDBD") No. 7212 and Rules 1.3, 1.4, 8.4 (a) (4), and 9.2 in SDBD No. 7402.

This is not the first time these matters have been before us. We first reviewed SDBD No. 7212 in 2019, when we rejected Tuggle's

petition for voluntary discipline of a reprimand because of his "fail[ure] to accept any sort of financial responsibility for the losses caused by his conduct or to provide concrete information as to what amount of restitution is due." *In the Matter of Tuggle*, 307 Ga. 312, 315-316 (835 SE2d 634) (2019) ("*Tuggle I*"). A few years later, SDBD No. 7212 was before us again, consolidated with another disciplinary matter, SDBD No. 7402. On that occasion, we rejected the recommendation of the Special Master and Review Board that Tuggle be suspended for one month for his conduct in both matters. See *In the Matter of Tuggle*, 317 Ga. 255 (892 SE2d 761) (2023) ("*Tuggle II*"). We concluded that Tuggle's pattern of misconduct, together with several aggravating factors, warranted more serious discipline. Id. at 279 (6) (c). But we also concluded that additional fact-finding would be useful in determining exactly what that discipline should be. Id. We therefore remanded the case to the Board and the Special Master with direction to the Special Master to conduct that fact-finding. Id. at 280 (6) (c).

2

The Special Master has now conducted that additional fact-finding. After an evidentiary hearing on November 9, 2023, the Special Master issued his report and recommendation, recommending that Tuggle be disbarred. The Review Board later agreed with the Special Master recommendation. For the reasons explained below, so do we.

1.    *Background*

The facts giving rise to this disciplinary matter are recounted in *Tuggle II*. As to SDBD No. 7212, those facts are as follows:

> In early 2016, a young client whom Tuggle had previously represented in a probate matter contacted Tuggle after being served with a separate but related civil suit. On February 16, 2016, he e-mailed the client a legal services agreement with the retainer language struck through, stating in his e-mail that he was not requiring her to pay a retainer. On February 22, Tuggle e-mailed the client, asking her to return the signed agreement so he could begin work on the case. On February 24, the client returned the executed agreement and a credit card authorization form. On March 2, the client requested an update from Tuggle; he did not respond, but charged $1,000 on the client's credit card on the same day.
>
> Tuggle knew that the answer to the complaint was due on February 27, but he did not file an answer until March 9. Tuggle also knew that he could open the default by filing

3

the answer and paying costs within 15 days of the default, see OCGA § 9-11-55 (a), but he did not pay costs when he filed the answer. According to Tuggle, he "attempted to pay" costs but was told by the court clerk that no costs were due at that time and that the court would send him an invoice if payment was needed.

On the day he filed the untimely answer, Tuggle e-mailed the client a copy of the answer and stated that he planned to file a motion to dismiss the following week. He did not acknowledge then, or tell her thereafter, that the answer had been filed late.

Thereafter, Tuggle performed no additional work on the case and stopped communicating with the client, who e-mailed him periodically for updates and never received a response. In addition to ignoring the client's communications, Tuggle also failed to respond to discovery requests and other communications from opposing counsel and took no action when served with the plaintiff's motion for default judgment or the court's orders scheduling the case for trial in December 2016 and again in April 2017. Ultimately, on April 12, 2017, after the second calendar call at which neither Tuggle nor the unsuspecting client appeared, a default judgment on liability was entered against the client. In May 2017, after a damages hearing at which no one appeared on the client's behalf, the court entered judgment against the client in the amount of $815,460.

The client learned of the judgment only when she began receiving garnishment notices in July 2017. The client tried to contact Tuggle but was unable to reach him.

In the following weeks, the client made repeated attempts to obtain her file from Tuggle, to no avail. Tuggle returned her file only after she filed a Bar grievance against him.

. . .

Tuggle never filed a motion to withdraw and remained counsel of record in the case until September 2017, when the client retained new counsel to try to get the judgment set aside.

Ultimately, the client was successful in getting the judgment set aside based on the trial court's finding that the default had resulted from Tuggle's "abandonment" of his client. . . . The client spent $31,857 in attorney fees to get the judgment set aside.

*Tuggle II*, 317 Ga. at 259-260 (3) (a). We also noted in *Tuggle II* that the client in SDBD No. 7212 had filed a malpractice suit against Tuggle, but that we would not consider the suit in our analysis because the disposition was not part of the record on appeal. Id. at 260 (3) (a) & n.12.

As to SDBD No. 7402, we recounted the following facts in *Tuggle II*:

In December 2018, Tuggle was hired by an elderly client to assist in applying for Medicaid benefits for his wife,

5

who had recently been admitted to a nursing home. Tuggle understood that filing the Medicaid application was "time sensitive" because the wife's Medicare benefits had expired and thus the clients would be responsible for paying out-of-pocket until the Medicaid application was approved. Because the client had dementia and was hard of hearing, he was assisted in his affairs by his daughters and granddaughters. Tuggle was paid $8,000 for his services.

As part of the process to qualify the clients for Medicaid, Tuggle helped set up a qualified income trust ("QIT"), which was established in mid-March 2019. The day after the trust was set up, Tuggle sent a letter to the nursing home, which was copied to the client, referring to her "pending" Medicaid application and stating that "we applied for Medicaid benefits effective March 1, 2019." It is undisputed that Tuggle had not submitted an application at this time.

During the next several months, the nursing home made frequent inquiries to the family and Tuggle about the status of the application. Although Tuggle testified that he had faxed an application in May 2019, there was apparently no record of any faxed application in the Department of Human Services' system.

Tuggle finally submitted the application on July 15, 2019. In August 2019, the application was granted, with benefits retroactive to May 1, 2019. This meant that the family would be responsible for the nursing home charges from December 2018 through April 2019.

In November 2019, one of the client's daughters sent a demand letter on the client's behalf to Tuggle noting that

the nursing home had billed the client $26,156 for her mother's nursing home care through April 2019. Tuggle responded that he was preparing a "formal appeal" to Medicaid but that he was also willing to pay "monies totaling two months of care," in the amount of $12,684, which he would send to the nursing home in monthly installments of $2,500. Tuggle did not file an appeal. But he did pay the nursing home a total of $12,000 or $12,500.

The client ultimately hired new counsel and filed suit against Tuggle. Tuggle failed to answer, and a default judgment was entered in the amount of $22,176, plus $2,000 in attorney fees and costs. As of the disciplinary hearing, Tuggle had not paid the judgment.

. . .

[I]t was undisputed that Tuggle had entered an agreement with his clients' "successor counsel" under which he agreed to "make payment" if they dismissed their bar complaint against him.

*Tuggle II*, 317 Ga. at 262-266 (3) (b)-(4) (a).

In *Tuggle II*, we concluded that these facts amounted to violations of Rules 1.1,[1] 1.3,[2] 1.4 (a),[3] 1.16 (d),[4] and 8.4 (a) (4)[5] in SDBD No. 7212 and Rules 1.3, 1.4 (a), 8.4 (a) (4), and 9.2[6] in SDBD No. 7402. *Tuggle II*, 317 Ga. at 271-273 (6) (a). The maximum penalty

---

[1] Rule 1.1 imposes the duty of competence on lawyers, which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The Rule defines "competent representation" to mean that "a lawyer shall not handle a matter which the lawyer knows or should know to be beyond the lawyer's level of competence without associating another lawyer who the original lawyer reasonably believes to be competent to handle the matter in question."

[2] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

[3] Rule 1.4 provides that a lawyer shall (a) (2) "reasonably consult with the client about the means by which the client's objectives are to be accomplished"; (a) (3) "keep the client reasonably informed about the status of the matter"; (a) (4) "promptly comply with reasonable requests for information."

[4] Rule 1.16 (d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

[5] Rule 8.4 (a) (4) provides that it shall be a violation of the Rules for a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

[6] Rule 9.2 provides that a lawyer "shall not enter into an agreement containing a condition . . . that requires [a] person to request dismissal of a pending disciplinary complaint."

for a violation of Rules 1.1, 1.3, 8.4 (a) (4), and 9.2 is disbarment. The maximum penalty for a violation of Rules 1.4 and 1.16 (d) is a public reprimand. We also held that "the aggravating factors we have identified—pattern of misconduct; multiple rules violated; vulnerable clients; lack of remorse or acknowledgement of wrongdoing; failure to make any restitution in one case and failure to make full restitution in the other—substantially outweigh the mitigating factors—no prior discipline; no selfish motive; attestations of good character." Id. at 278 (6) (b). And we determined that "many of Tuggle's actions were committed with intent or at least knowledge [and] that he caused serious actual and potential injury to both clients." Id. at 278 (6) (c).

Given the nature of Tuggle's conduct and the balance of aggravating and mitigating factors, we held that the recommendation of a one-month suspension was "grossly inadequate." Id. We stated that, instead, "a significant disciplinary sanction in the form of either a lengthy suspension with conditions or disbarment is warranted." Id. at 279 (6) (c).

We further determined that, in deciding the appropriate discipline for Tuggle, it would be useful to have the benefit of fact-finding on the post-hearing developments in the malpractice suit arising from SDBD No. 7212, as well as on the amount of restitution the Bar contended was still owed to the client-grievants in both matters. Id. at 280-281 (6) (c). Accordingly, we rejected the recommendations of the Review Board and Special Master and remanded the case to the Review Board with direction that the Review Board remand the case to the Special Master for (1) further fact-finding as to developments in the malpractice suit and restitution owed; and (2) "a new recommendation as to the appropriate discipline to be imposed, consistent with the findings and conclusions in this opinion and informed by the Special Master's additional fact-finding on the two issues outlined above." Id. at 280 (6) (c).[7]

---

[7] On remand, a new Special Master, Kevin Hicks, was appointed.

*2. Factual Findings on Remand and Updated Report and Rec-
   ommendation*

On remand, the Special Master held an evidentiary hearing on November 9, 2023, and found the following facts.

(a) *Malpractice Action*

The initial disciplinary hearing occurred in April 2022. At the time of that hearing, the client in SDBD No. 7212 (Client One) had a malpractice case pending against Tuggle, and had filed an unopposed motion for summary judgment in that case. The trial court in that action had scheduled a hearing on the motion for summary judgment, but Tuggle, who was representing himself in the case, contacted the court to announce a conflict and failed to appear for the hearing. The trial court rescheduled the hearing, via Zoom, and ordered that no further continuance would be granted without written notice of conflict. Tuggle failed to appear for the rescheduled hearing as well. The trial court granted Client One's unopposed motion for summary judgment and scheduled a hearing on damages.

Leading up to the damages hearing, Client One's attorney emailed Tuggle asking if he wished to add information to the pretrial

order. Tuggle's response was "Nope. Get a judgment and I will file BK. Take care." "BK" referred to bankruptcy. In fact, Tuggle had unsuccessfully filed for bankruptcy twice during the pendency of his malpractice proceedings. Tuggle later characterized his statements about bankruptcy as a "threat," a "tactic," or "leverage" to jumpstart negotiations and get a reasonable settlement. But the Special Master found that Tuggle's responses showed he had no intent to participate in the damages hearing or resolve the malpractice case.

Tuggle failed to appear for the damages hearing, and on March 28, 2023, the trial court entered a damages order in favor of Client One. The trial court awarded Client One the following damages: (1) $100,000 for intentional infliction of emotional distress caused by Tuggle's legal malpractice and breaches of fiduciary duty; (2) $1,000 for attorney fees paid by Client One to Tuggle; (3) $32,000 for attorney fees paid by Client One to address the default judgment entered against her; and (4) $25,000 for attorney fees incurred by Client One in bringing the malpractice action.

Tuggle did not make any payment on this judgment. Between the damages award on March 28, 2023, and the issuance of *Tuggle II* on September 6, 2023, Tuggle did not contact Client One or her attorney to try to negotiate or satisfy the judgment. Moreover, between Tuggle's April 2022 disciplinary hearing and the issuance of *Tuggle II*, Tuggle did not pay any of the attorney fees that Client One had incurred, and he did not contact Client One or her attorney to try to resolve the malpractice case or the outstanding attorney fees.

The Special Master also made findings of fact about a separate action against Tuggle, which related to the other disciplinary matter, SDBD No. 7402. The Special Master found that Tuggle's clients in that case (the Second Clients) had won a judgment against him in September 2021, which was still pending as of the April 2022 disciplinary hearing. The trial court had awarded the Second Clients $22,176, plus $2,000 in attorney fees and expenses of litigation, plus the costs of the action. As of April 2022, Tuggle had not made any payments to satisfy the judgment. Between the April 2022 hearing

13

and the September 6, 2023 issuance of *Tuggle II*, Tuggle did not make any payments toward satisfying the Second Clients' judgment and did not contact the Second Clients or their attorney to try to negotiate payment.

(b) *Restitution*

On the issue of restitution, the Special Master found that, after this Court issued its opinion in *Tuggle II*, Tuggle waited over a month to reach out to Client One and the Second Clients. As to Client One, Tuggle's attorney in the disciplinary proceedings sent a letter on October 10, 2023, offering to pay Client One $58,500—the amount of attorney fees awarded in the March 28, 2023 damages award—in monthly installments of $2,500, starting on November 1, 2023. Tuggle was "heavily involved" in drafting this letter. The letter further stated that the payments were contingent on Tuggle maintaining an active law license, and that payments would be "tolled during any period of suspension from the practice of law until [Tuggle was] reinstated." Client One did not believe that Tuggle's offer was made in good faith. She testified that, given that Tuggle would

likely receive a suspension, the contingencies in his offer meant she was unlikely to see any payments. And notably, Tuggle did not offer to pay *any* portion of the judgment awarded to Client One for intentional infliction of emotional distress. Although Tuggle understood that he was responsible for paying the entire amount of the judgment, he testified that, to him, "making [Client One] whole" meant only paying her the out-of-pocket attorney fees she incurred.

Tuggle made a similar offer to the Second Clients. On October 10, 2023—the same day that his lawyer sent the letter to Client One—Tuggle emailed the Second Clients' attorney with an offer to resume making payments to the Second Clients. In the email, Tuggle stated that he already paid $12,500 of the $27,176 owed,[8] and that he would resume making a payment of $2,500 per month beginning on November 1, 2023. The payments were contingent on his having an active law license, and, if Tuggle was "suspended by the Georgia Bar then payments [would] be tolled during that period and

---

[8] The order of the trial court was $24,176 plus costs. The amount referenced here is pursuant to the agreement reached between the Second Clients' attorney and Tuggle.

shall resume upon reinstatement." The Second Clients (unlike Client One) accepted Tuggle's offer. To date, Tuggle has made one payment of $2,500 to the Second Clients, on October 30, 2023.

(c) *Special Master's Recommendation*

After finding these facts, the Special Master recognized that his task, per our opinion in *Tuggle II*, was to determine whether Tuggle's conduct since the April 2022 hearing weighed in favor of suspension or disbarment. To that end, the Special Master noted that American Bar Association Standards 4.41 (b) and (c) provide that disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client, or a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. The Special Master noted that ABA standard 5.11 (b) provides that disbarment is generally appropriate when a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

16

The Special Master found that, with regard to Client One's malpractice lawsuit, Tuggle's actions since the April 2022 hearing showed that (1) he made no attempt to resolve the malpractice case before the trial court entered a judgment almost one year later; (2) he disregarded court hearings and failed to appear in court; (3) he responded flippantly when asked if he would participate in the damages hearing, choosing instead to threaten bankruptcy in the face of a judgment; and (4) despite testifying that his new offers to settle would not be dischargeable in bankruptcy, his terms for settlement included that the payments would be tolled during any period of suspension.

With regard to restitution, the Special Master found that after the March 28, 2023 judgment in Client One's case, Tuggle took no steps to acknowledge responsibility or negotiate the judgment against him until after this Court raised the issue in *Tuggle II*. The Special Master further found that, even after *Tuggle II* issued, Tuggle did not make a good-faith offer to Client One. Client One's judgment against Tuggle remains unsatisfied, and Tuggle's decision to

17

threaten bankruptcy as a "negotiation tactic" belied any good-faith intentions. Tuggle testified that the clients "played the cards they had by filing a Bar complaint," and so "the only way to try to get a reasonable settlement is by threatening bankruptcy." He also testified that "[i]t's a very drastic measure and I wouldn't employ it unless if I needed to[, a]nd when the scales are so tipped in their favor, it's hard to get a reasonable settlement." The Special Master found that Tuggle's actions reflected his continued efforts to take advantage of a vulnerable client through deceptive tactics and misrepresentation. The Special Master further found that Tuggle appeared to ignore the ramifications of his actions by minimizing the damages ordered after his unexcused absence from the hearing.

As to the Second Clients, the Special Master found that Tuggle made one payment of $2,500 since the trial court entered a judgment in September 2021, over two years ago, and that Tuggle's conditioning any payments on his not being suspended from the practice of law made it unlikely that the Second Clients will receive the full amount they are owed.

The Special Master then considered what level of discipline was appropriate for Tuggle. The Special Master found that Tuggle's actions since the April 2022 disciplinary hearing, and during the November 9, 2023 disciplinary hearing, were aggravating factors. The Special Master noted that Tuggle has remained an active member of the Bar in good standing since the April 2022 hearing, and he has continued to practice law and earn income as a lawyer. Nevertheless, he has failed to demonstrate good faith in trying to resolve the financial obligations in both matters that have been a concern to this Court since it rejected his initial petition for voluntary discipline in 2019. See *Tuggle I*, 307 Ga. at 315-316 (rejecting petition for voluntary discipline requesting Review Board or public reprimand in part because of Tuggle's "fail[ure] to accept any sort of financial responsibility for the losses caused by his conduct"). Accordingly, the Special Master recommended that Tuggle be disbarred.

(d) *Tuggle's Exceptions and the State Bar's Response*

Tuggle filed exceptions to the Special Master's report and recommendation and requested review by the Review Board. Among

19

other things, Tuggle claimed that he failed to fully satisfy the money judgments against him in part because he lacked the financial resources to do so. He argued that the Special Master, by disregarding his financial circumstances, had created a two-tiered system of discipline in which wealthy lawyers receive lesser discipline than other lawyers who commit identical infractions but are unable to pay. The State Bar responded that Tuggle's argument was a mere distraction from his misconduct. Tuggle had made no attempt at restitution even when he continued to earn income as a lawyer during the 16-month period between the April 2022 disciplinary hearing and the issuance of *Tuggle II*. Only when this Court signaled that Tuggle might be disbarred did he take any steps toward restitution, and even then, his offers of restitution to both clients were contingent on his retaining an active license to practice law—a contingency that was unlikely to occur. The State Bar argued that Tuggle's claimed lack of financial resources was not a mitigating factor under these

circumstances. In the Bar's view, if the appropriate level of discipline depended on Tuggle's conduct relating to restitution, then the evidence weighed heavily in favor of disbarment.

The Review Board rejected Tuggle's arguments and agreed with the State Bar and the Special Master. Adopting the Special Master's factual findings and conclusions of law, the Review Board recommended that Tuggle be disbarred from the practice of law.

3. *Analysis*

In *Tuggle II*, we recounted Tuggle's conduct and emphasized how serious it was. Tuggle violated six provisions of the GRPC, including Rule 8.4 (a) (4), which is "among the most serious violations with which a lawyer can be charged." *Tuggle II*, 317 Ga. at 278 (6) (c) (citation and punctuation omitted). He violated the duties of "competence, diligence, and candor," as well as his duties in "communicating with clients, upon termination of his relationship with clients, and with respect to agreements conditioned on dismissal of disciplinary complaints." Id. His actions "were committed with in-

tent or at least knowledge." Id. He "caused serious actual and potential injury to both clients." Id. And the aggravating factors involved—a pattern of misconduct, multiple rules violated, vulnerable clients, lack of remorse, and a failure to make full restitution—substantially outweighed the few mitigating factors. Id. at 278 (6) (b)-(c). We concluded that "a significant disciplinary sanction in the form of either a lengthy suspension with conditions or disbarment is warranted" to redress Tuggle's misconduct. Id. at 279 (6) (c). The only question was whether Tuggle should be suspended or disbarred. Now, with the benefit of the Special Master's additional fact-finding about the clients' actions against Tuggle and his behavior regarding restitution, we conclude that disbarment is the appropriate sanction.

To begin with, we agree with the Special Master and Review Board that Tuggle's conduct since the April 2022 hearing has aggravated his Rule violations. While Tuggle has made a few payments toward the judgment in the Second Clients' case against him, he

22

made absolutely no effort to do so until this Court indicated in *Tuggle II* that he may be subject to a more serious sanction than a one-month suspension. And after the Court's opinion issued, Tuggle conditioned both of his settlement "offers" with his client-grievants on not being suspended from the practice of law, even though he knew he would be at least suspended, if not disbarred, at the conclusion of this matter. He made no payment at all toward any portion of Client One's judgment. He disregarded the judicial process which led to that judgment. He also threatened Client One—who was vulnerable, see *Tuggle II*, see 317 Ga. at 275 (6) (b)—that he would file for bankruptcy if she got a judgment against him. And he failed even to acknowledge the additional $100,000 that the judgment required him to pay Client One for intentional infliction of emotional distress. In sum, Tuggle made infrequent and minimal restitution payments, and the total amount he has paid is dwarfed by the amount still outstanding.

As for Tuggle's arguments before the Review Board, he has cited no cases in which we held that a lawyer was entitled to a lower

23

level of discipline in light of his limited financial resources. And in any event, the evidence supports the Special Master's finding that Tuggle made no attempt to satisfy any judgment against him prior to this Court's opinion in *Tuggle II*, even though he very well could have done so because he was still earning income as a practicing attorney. In short, Tuggle did not use the means available to him to make or attempt to make restitution to the client-grievants until he recognized he could face serious sanction for his conduct. Tuggle has demonstrated a care and concern for his own circumstances and not for his clients' circumstances or the harm he caused them.

At bottom, the Rules and our precedent support disbarment for misconduct like Tuggle's. See *In the Matter of Roberts*, 314 Ga. 510 (877 SE2d 266) (2022) (attorney with no prior discipline disbarred for conduct in two client matters where attorney failed to respond to filings and appear at court hearings and failed to communicate and consult with clients to the substantial detriment of both clients, and where attorney refused to acknowledge wrongful conduct and

24

showed indifference to making restitution); *In the Matter of Holliday*, 308 Ga. 216 (839 SE2d 518) (2020) (disbarring attorney with no prior discipline for multiple rule violations in three client matters where attorney abandoned clients' cases and failed to communicate with clients to their detriment); *In the Matter of Koehler*, 297 Ga. 794 (778 SE2d 218) (2015) (attorney with no prior discipline disbarred for multiple rule violations in one client matter in which, among other aggravating factors, attorney failed to acknowledge his wrongful conduct). Therefore, after considering the record as developed both before and after the issuance of *Tuggle II*, we agree that disbarment is the appropriate sanction in this matter.

It is hereby ordered that the name of Nevada Michael Tuggle be removed from the rolls of persons authorized to practice law in the State of Georgia. Tuggle is reminded of his duties under Rule 4-219 (b).

*Disbarred. All the Justices concur.*